Brunel Constant on appeal. May I reserve two minutes for rebuttal? Yes. Thank you. The district court found that the photo array procedure here was quote extremely suggestive and as a result it was quote a very close call whether Adam Dennis's in-court identification of Mr. Constant should be suppressed. It made several factual and legal errors which if they had been remedied would have turned a very close call into an order suppressing this corrupted identification. The danger of a case like this is that a witness in the position of Adam Dennis will latch on to his suggestively prompted identification rather than his independent recollection of the person at the scene. I'd like to focus my at on pages 96 through 98 of the record appendix and that's the second order on the motion to suppress. This is after the video comes in of the photo array procedure which I would suggest is extraordinary in and of itself that we have video of actually what happened during this procedure and how the district court made a couple of legal errors in that analysis. The first legal error I found was this. The district court has a lot of focus on Adam Dennis's so-called level of certainty in his identification of Mr. Constant's photograph. There's no legal discussion and I think this is important there's no legal discussion how lack of confidence is a reliable warning sign when it comes to the reliability of an identification and certainly Adam Dennis demonstrated the waffling between two photographs. Even when Mr. Constant's photo he's already being kind of pulled in that suggestion. Mr. Constant's photo was pulled out of one folder to another folder and then as the photos are being laid out Mr. Constant's photo is put right in front of him in the middle. Even still he waffles. He says my money's on this one he points at Mr. Constant's photo or this one and he points at a different photograph and of course without missing a beat the officer says so you think it's this one here and he points again at Mr. Constant's photograph and this is by the way after he says I'm not sure so it's this one right um yeah so he gets that missing a beat doesn't ask his level of certainty or anything like that gets a pen so you want to sign that right there sir you want me to sign right here sure sign there and that's what he does and it's all rushed and it's and it's done and then even more importantly after that he said well before that he says we have the suspect in custody their bookends here before that he says we've got the suspect in custody afterwards he says awesome that's the guy we have in custody right now and that must have or at least there's a very substantial risk that that crystallized in Adam Dennis's head that the image of this person is who did it despite you know because of the suggestive prompts because the police officer is telling me right now this is the guy we have in custody so there's there's a very subtle we can agree that it was highly suggestive so the trial court found the real question has to do with the admissibility of the later in court identification and whether the impermissible earlier identification so tainted the later identification that it should not have gone to the jury our case law does tend to support giving it to the jury as the appropriate outcome here so I think it would help if you would focus on the government's argument that there was plenty of opportunity for person who shot off the gun because in a sense you're weighing how significant that opportunity was against the prejudice caused by the earlier improper identification procedures yes your honor I will focus on that I think this case has remarkable similarities to DeJesus Rios. In DeJesus Rios this court reasoned that as far as the opportunity to view factor it gave it gave the court pause that the witness saw the person in and actually in that case in full lighting for about five minutes at least five minutes and though even though that gave us court pause the ID was so suggestively prompted that it was willing to weigh the corruptive or weigh that factor against the corruptive effect and that's the main test is how corrupt is this but as far as the facts in this case we have an argument and when he's asked about this and this is page 609 of the record appendix I think is very very pertinent here because the governor the ASA asks what was your most what's your best memory what's your biggest memory about this encounter with this man on the port he says the argument the argument and that's telling because afterwards what does he tell st. Lawrence he says to st. Lawrence well black man dreadlocks that's it as far as the hat he also goes on to say there was a hat no one else corroborates this supposed hat or the jewelry so really what we're left with is black man dreadlocks and 10 to 15 minute discussion on a poorly lit back porch with the people moving and part of the encounter is under a hall light so that it's not it's not exactly five minutes it's a longer period of time and part of the period of time is in the light although the rest of it is in the shadows do I have that correct and I believe the district court found this as well that it was actually five five minutes at most ten minutes and I government makes a lot out of the fact that before the man leaves he threatens to come back with a gun and that makes this encounter particularly memorable so what's your response to that my response to that is what Dennis testified to which is my focus was on the argument and getting him off the porch and I age height he couldn't give any more physical features if it really were mr. constant I find it interesting that he didn't mention all of these tattoos mr. constant had why do we why do we even care about the lighting and all of that in this case because in this case we actually have not just a suggestive prompt an interview but we actually have a video that shows that within 24 hours of the incident he really was guessing as to who it was even when the guy whose face was put right in front of him he says I guess this is a tough one I'm guessing it's him or him I'm not sure so since we have proof of what he didn't know why do we have to look at these other factors from which one might otherwise infer whether he knew I think that's I think that's right in the end because when you're weighing those bigger factors against the corrupting effect of these prompts then the corruptive the corruptive effect really leads us to suppression there's no I mean it's it's such an again we go back to the you know it takes an extraordinary case well this is an extraordinary case these are extraordinarily suggestive prompts they're going on what what about the government's harmless error argument in words let's let's assume we agree with you on the but the government says he essentially admitted to possession of the gun and there's a lot of evidence pointing in that way isn't that a way we can resolve this case is just go off on harmless error well it's interesting so when I was reviewing the the transcripts the and this was after the video came in and there was discussion of you know argument as to why the in-court ID should also be suppressed district court says I'm gonna take it under advisement by the way government counsel what do you think about trial like who are you gonna call and the government says you know I'm thinking of just calling the police officers but then there would be holes in the story I think I'm in the end probably gonna call Adam Dennis which of course she does for good reason she wants that in-court ID she wants that but sure sure it's it's adding but that's not how we analyze it let's look at the evidence that's there without the witness ID by Dennis what what possible defense did your guy have to the possession charge well the defense counsel made a very very I thought persuasive argument that the so-called confession was false because if you read the chance in the record appendix the transcript of this interview with mr. constant it's just overborn with lie after lie we have a bottle we were gonna find your DNA we're gonna get Prince I mean it's just lie after lie that that could have just overborne his will well stay with that because that puzzles me I would think if the police officer said to him we have a bottle and we're gonna get DNA that would not cause an innocent person to say they were guilty it would do just the opposite it would exhilarate an innocent person if they learned that the police had DNA showing who it was it would only coerce a confession out of someone who thought they were guilty because they now knew the Jake was up well I won't bore you with law review articles and I think that's just not true but it's at least a jury question it's certainly well within the jury's ability to say no I don't believe that confession and there's probably a good reason why he confessed because at the end and the defense of counsel argued this notice how he's asking is my girl gonna get in trouble to Misha Blackwell who he was with at the time is she gonna get in trouble okay and then the second thing was he also asked st. Laurent on the stand at trial what about this guy named CJ remembers you got a lead about this guy named CJ who also had dreadlocks he also could have been a shooter yeah I didn't follow up on that lead about CJ so you've got you know some third-party culprit that the jury could work with you've got a so-called confession they could have found false and as this court found in de Jesus Rios you look at is there is there really no reasonable doubt here and is this or is an in-court identification he's the shooter in other words he's the one with the gun and he came back and shot up a place is that gonna be the real clincher for the jury and I would suggest yes an in-court identification as the United States Supreme or a circuit said is quote devastatingly persuasive and it is and that's exactly why the government wanted it in I still have not heard an adequate response on the harmless error argument and charged with being a felon in possession a gun is found in the rafters in his where he's staying he says the gun is his why doesn't that alleviate any error on the identification because as defense counsel argued that was a false confession and he he cross-examines the officer St. Laurent very well on this you lied to him about this didn't you yes you lied about this this this this is this a common practice of with your office yes it is so the jury was well within its bounds to say this is a false confession we're not going to consider it I believe my time is up. I'm Margaret McGoy for the United States if I may begin with the court's question you know obviously the court has looked at the disk containing the evidence about the initial identification procedures and we're not very happy about it and neither was the case agent the case agent testified at the suppression hearing that this would have been a training video about how not to do it so I am not going to defend that out-of-court procedure at all I would like to put this in perspective both at the front end and at the back end at the front end in this case the district court held two suppression hearings issued two opinions it's suppressed Coleman's out-of-court and in-court identifications Roy and Cody did not testify at all the government voluntarily agreed not to elicit the out-of-court identification the court suppressed that out-of-court identification only allowed Mr. Dennis to testify quote if he can and the defense counsel on cross-examination but let me skip to the back end which is your question judge Lynch and your judge Kayada about harmless error the assistant US attorney in this case teed that right up in rebuttal and I would direct the court to page 930 of the record in which she specifically said to the jury that they didn't need to take Dennis's in-court identification into first of all because Dennis and Coleman gave virtually identical descriptions of the defendant that he was a large black man with braids or dreadlocks second that the police found a man who fit that precise description within a very short distance of the crime and a short time after the crime you can tell that that the description is accurate because you have photographs both of the third that the police found a gun in the rafters outside the apartment where the defendant's girlfriend admitted that he stayed on occasion and remember the charge was not his being a shooter the charge was being his being a felon in possession yes but against that we have the opening where the prosecutor said he was the shooter and we have the closing at which the prosecutor said he was the shooter and so although the jury could have found the possession charged to have been proved without accepting that he was the shooter the question with respect to harmless error isn't could but would right it's it's got to be would and and I take it that the gun it was not proved that the gun was the gun that was involved in the shooting they were not able to remove the slug in the microwave of the downstairs apartment where it landed okay so how so could you respond to the fact that that the government did rely on him being the coward one is that the court's instructions made very clear to the jury that the elements of the offense they were to find were elements of possession of a firearm by a felon the court's instructions said nothing about his being a shooter the government was arguing that he was the shooter as another means of proving that he possessed the firearm that was found in the rafters but I would come back to the recorded conversation because I think that is very was very uncooperative in the course of the recording you there is a DVD of that as well but in the end he said finally it was time for him to man up and take responsibility for what he did that he held the revolver for a friend he possessed it and that he put it in the rafters where the police officers found it so whether or not he was the shooter was relevant only for sentencing purposes and judge Torres and found that he was the shooter because she imposed the two-level enhancement what what do you say about is I understand the defendants primary argument against precisely that point is that we cannot find beyond a reasonable doubt that we cannot say that it's beyond a reasonable doubt that the jury would have rejected would not have rejected the confession because the jury might have found that he was trying to protect his girlfriend well the issue of the voluntariness and truthfulness of the confession was squarely before the jury in terms of cross-examination and in terms of counsel's arguments defense counsel urged the jury to believe that the defendant simply told a pack of lies in order to get himself up so that is a jury question well but but for us if we're under harmless error we've got to not only that the jury could have found that but we've got to be essentially certain the jury would have rejected that argument this this aspect of it in in my estimation is not a constitutional harmless error argument this is a regular evidentiary harmless error argument but even if I am held to the higher standard of proof beyond a reasonable doubt a reasonable reading of the record is that all of this information was squarely before the jury it was the subject of openings closings the district court could not have been more painstakingly careful in describing what the jury could consider about the identification about what the elements of the crime were about what the jurors responsibility sure they got all that but what why would it have been possessing the gun in order to protect his girlfriend for whom he expressed concern yes I think it would have been irrational in light of the fact that to eyewitnesses to the event described the perpetrator the person who had the gun in the same way that the police found a person who fit that description within a of the possession of the firearm regardless of whether it was fired and that that taken in conjunction with a confession that was the subject of great debate among the parties that that is makes it harmless error if it is air at all and we do not concede it was error to admit it I think what I hear you saying is is that even if you get rid of the Dennis's testimony altogether and look at the record that the evidence about the shooting the other evidence about the shooting it adds as well to the possession claims it does it does but again coming back to judge Howard's question the judge did not tell the jury that that the shooting had anything to do with it what the judge charged the jury is that they must find that the defendant yes but but they got but the government relied on that in closing and in opening and closing and judge Howard as you know do you know if if if it can be teased from the record why the identification was necessary to the government's case it's it's whether it's necessary or whether the government if it's harm if it's it's such harmless error they could have gone without it I'm just trying to understand why it was put in at the point we want to try since it was a close call here I mean judge what judge Torres and said was not that this is that a rock-solid identification you're gonna get it in she said you can try to elicit it and he can identify if he can and then there followed testimony from mr. Dennis that was entirely consistent with his testimony at both of the suppression hearings that was consistent with the judge's findings of fact if I if I might not quite yet it seems to me that that the government has to put the identification and because at least one prong of their theory is that they want the jury to believe he was the shooter and they couldn't prove that through the gun so they've got to have an identification witness is that and my mistaken about that but that it's another brick in the wall of guilt and even if you extract the theory that he was the shooter you have two people in court identifying a man in terms that are consistent with the man who is found it by the apartment where the gun is found who later confesses to it so yes this may have been icing on the cake but I can't think of any precedent in this court that says the government is precluded from using evidence that a I don't think that's I don't think that's where judge Howard is going I think the proposition is having been told that it's a close issue as to whether this evidence should be admitted at all or whether it would be a constitutional error the prosecutor apparently nevertheless felt it was needed enough to take that chance and the prosecutor presumably knew the case as well as anyone else that's the inference that and I and I think this court's precedent stands for the proposition that the prosecutors are allowed to pick and choose evidence and the first hurdle is to prove the defendant's guilt beyond a reasonable doubt and the second hurdle is to defend the conviction on appeal and they have different standards the standard before the trial is what is our best foot forward to have proof that this defendant possessed a firearm as a felon and then my job in this appeal is first to defend the ruling of the district court which I have done adequately in the brief I believe and I'd be happy to answer questions about it we do not in remotest sense concede that the in-court identification was impermissible this is a witness who can testify consistently that he saw the perpetrator face to face between me and no no farther away than me in this desk for five to ten minutes that he engaged in a confrontation which you don't do by staring at the floor you do it by looking at someone's face if you had all that and that was all there was then clearly you could do it okay but what you've got that you seem to be skipping over is that after he did these things after he saw him after the lighting within 24 hours he's saying this is tough I guess so I'm not sure could be him could be him so we know from your witnesses own mouth that within 24 hours he didn't sound like he could identify this one black fellow with red locks from another fellow with black. I believe you're merging two different things Judge Tejada. One is the issue of whether out of court the witness could identify the defendant from six photographs that is separate from the issue of whether the witness had independent recollection of the description of the perpetrator. This court's precedent very firmly is on the government side because this court's precedent that two members of this court have sat on four of the most recent identification cases and those cases stand for the proposition that except for the extraordinary case in identification testimony should be admitted and it should be subjected to the jury that they shouldn't believe Dennis's testimony for a moment because he showed them the DVD that the court has seen. Let me ask you about the court let me ask you about the courtroom identification itself if that's all we had is just the courtroom ID wouldn't the courtroom ID itself flunk the test that we apply to determine whether an identification is too suggestive in you bring this witness into the courtroom and he sits there I don't think many witnesses point at the prosecutor when they're asked to identify the person they always point that that guy's sitting next to the defense lawyer. In this case one of the things that defense counsel urged the jury to believe was this witness only knows who the defendant is because he's been in court beside defense counsel three times so defense counsel made that credibility argument the same one we're making and we have to infer from the jury's decision to convict that they resolve the credibility determinations in favor of the government. I think you're overstating our suggestion that you divorce the suggestiveness of the lineup from the opportunity to observe in the first instance because one of the other factors and just correct me if I'm wrong one of the other factors is how certain was the person when he did the identification during the lineup but you can't separate that entirely from the suggestiveness of the lineup can you? I mean our cases don't draw that distinction do they? What your cases do Judge Howard is you have the five-part test that applies to the out-of-court identification then you have the presumption basically the presumption of admissibility of the in-court subject to the five-part test which Judge Torres analyzed in great detail. But she made a mistake when she talked about how certain he was when he did the identification she said he paused for only a second and I can't tell you how many times I've heard that. I can't tell you how many times the videotape has been looked at in this court and there are no one-second pauses. Actually there is one there's one one-second pause that's when the detective says it's this guy right? When Mr. Dennis was asked in court three hearings were you certain of your choice he said yes and when he was asked before he was ever asked to identify the defendant in court do you think you can identify the defendant in court? Do you think you can identify the man based on your memory he said yes and when he got into court and he was asked can you identify the man with whom you argued and who threatened to return with a gun he said the defendant. So the level of certainty I understand is a question that the court has had but in this case the witness's memory was that he was certain. If the court has questions about the other issues I'd be happy to answer them otherwise the government will urge the court to affirm. Yeah I would like you to take a minute to respond to the following suggestion that the fact that the videotape is available and it has been the cause of a lot of questions from this panel suggests that maybe police should not maintain a record of their interrogations and lineups. Can you respond to that? I think the police are trying to record things because they want this court to see exactly what they did. It is a source of embarrassment to the agent in this case that lineup but nobody tried to hide it from this court and suggesting that we not record things is I think not doing anyone a service. Good morning again. I believe I heard at some point the government concede that it was important for it to have this identification in evidence and I think I even heard a great Pink Floyd reference which is another brick in the wall of guilt. Well it was a brick in the wall of guilt. It was an important brick in the wall and that's where in De Jesus Reos when we're talking about harmless beyond a reasonable doubt this court said well we don't know, we can't trust anyone. I think it's important to understand how the jury used this identification. How do you explain his step? Didn't he say that you'll find my fingerprints on the gun? He did say that. He did say that. Again, lie after lie after lie. Why is he not only falsely confessing but then adding in a detail like that that would be potentially verifiable? Well because I believe and I'm trying to remember this chronologically, I believe the police had already said before he said that we're going to find your prints, we're going to find your DNA on that gun. So already that suggestion is in his head that they've got the prints. What's wrong with that? I'm sorry? I'm just trying to remember that the police have to be absolutely honest in every statement they make in the interviewing of a potential defendant. But the law does not say that. So how does that help you in countering the fact that he said you will find my fingerprints on the gun? Because as the government just conceded, it's a jury question. So it might not be enough for a motion to suppress the statement because maybe all these lies, they're still not enough to just so overbear the will that it's a motion to suppress. But it's definitely a jury question and when pressed about harmlessness, again, the government goes back to he's the shooter. He's the shooter. Well what's the best evidence that he's the shooter? Adam Dennis saying that's the guy. Thank you, your honor.